CHARLES F. STICKNEY *vs.* CITY OF SALEM.

A town is not liable in damages to one who, while stopping in the highway for the purpose of conversation, leans against a defective railing and is injured by reason of its insufficiency.

TORT by the administrator of Richard Stickney, to recover damages sustained by the deceased by reason of a defective highway.

At the trial in the superior court, before *Putnam*, J., the plaintiff offered evidence tending to show that Hardy Street was a highway in Salem, leading to the sea. At its termination there was a sea-wall about eight feet in height, and a wooden fence, built by the city, extended across the whole width of the street, and had become defective.

The plaintiff called a witness who testified that Richard Stickney, whose age was seventy-three years, and who lived on Hardy Street, walked with him down to the fence, for the purpose of showing to him the harbor and surrounding objects, and upon reaching the foot of the street stood for ten or fifteen minutes near the fence, Mr. Stickney pointing out to him various objects in and around the city and harbor, and engaged in conversation generally; and Mr. Stickney then turned round, folded up his arms, leaned against the top rail of the fence lightly, and one end of it gave way, and Mr. Stickney fell backwards over the wall on to the beach, the tide being out, and was severely injured. There was other evidence in corroboration of the above.

The defendants requested the judge to instruct the jury that upon this evidence the plaintiff was not entitled to recover, and also submitted various special requests for instructions, which the judge declined to give, and instructed the jury as follows : " That it was only those who were using the highway for legitimate purposes in the usual and ordinary mode who could recover damages for injuries caused by defects in such highway; that the right of foot passengers in the road was only that of

passing and repassing over it in the usual way and for ordinary purposes, whether for business or pleasure; that it did not necessarily follow from this, however, that a foot passenger must keep moving all the time; that he might stop for all reasonable and proper purposes connected with the objects of his passing, such as resting and addressing his friends whom he might meet, and so long as such stopping did not inconvenience others, and so long as he made his stopping but incidental to the main object of passing; that it would be for the jury to say in this case, taking the whole evidence into consideration, the age of the individual, and the object and motive in passing down the street, as he did, whether the stopping was reasonable and proper, and only incidental to his passing, or whether his passing over the road being ended, his intention was not to return immediately, but to remain there resting and lounging, so that wnat should be merely incidental had become his main object, and if they found the latter, then the plaintiff could not recover in this action; that it was true that the city were not bound to furnish railings for foot passengers to lean upon for the purpose of resting themselves; but if the jury found the railing was necessary at the place of its erection, they were to judge whether the use of it for the purpose of resting upon it in the manner the plaintiff did was or not a proper and just use thereof as incidental to his main right in the way."

The jury returned a verdict for the plaintiff, and the defendants alleged exceptions.

*W. C. Endicott,* for the defendants, cited *Stinson* v. *Gardiner,* 42 Maine, 248; *Hayden* v. *Attleborough,* 7 Gray, 338; *Palmer* v. *Andover,* 2 Cush. 600; *Richards* v. *Enfield,* 13 Gray, 344.

*J. C. Perkins & C. P. Thompson,* for the plaintiff. Courts have never decided the objects for which a man may travel on the street, the rate of speed at which he must go, the length of time he may stop, or what he may do while he stops. These matters are all for the jury, who in this case have found that the plaintiff was in the rightful use of the highway. The plaintiff does not contend that it is the duty of towns to put up barriers or fences for persons travelling on the highway to lean

against. But towns have no right to place or keep any structures in the highway which may tempt or decoy persons lawfully upon it to their destruction. In the present case, a dangerous trap was suffered by the defendants to remain within the highway. *Cobb* v. *Standish*, 14 Maine, 198. *Kellogg* v. *Northampton*, 8 Gray, 504. *Howard* v. *North Bridgewater*, 16 Pick. 190. Persons are presumed to contemplate the probable consequences of their acts, and are liable to those who suffer injuries therefrom. *Lancaster Canal Co.* v. *Parnaby*, 11 Ad. & El. 243. *Corby* v. *Hill*, 4 C. B. (N. S.) 556. *Townsend* v. *Wathen*, 9 East, 277. It is not controverted that the condition of the railing constituted a defect in the highway. The question whether the plaintiff was free from fault was for the jury; and it cannot be laid down as a peremptory rule, that one who remains ten or fifteen minutes in conversation at the end of the street, viewing the surrounding objects, is not lawfully on the street as a traveller. The whole matter was for the jury. *Beers* v. *Housatonic Railroad*, 19 Conn. 566. *Birge* v. *Gardiner*, Ib. 507. *Park* v. *O'Brien*, 23 Conn. 339. *Lynch* v. *Nurdin*, 1 Q. B. 29. *Clayards* v. *Dethick*, 12 Q. B. 439. *Powell* v. *Deveney*, 3 Cush. 300. *Marble* v. *Worcester*, 4 Gray, 405, 407. *Munroe* v. *Leach*, 7 Met. 274.

BIGELOW, C. J. The instructions to the jury in this case were erroneous. Taking the statement of the plaintiff's witness, who was with the deceased at the time of the accident, to be true, it is clear that no cause of action against the defendants was proved. His testimony shows that the deceased was not using the railing, which is alleged to have been defective, for a purpose for which the city was bound to erect and maintain it. His improper and unauthorized act contributed to the accident.

The legal obligation of keeping a sufficient railing upon a highway is imposed only when it is necessary to mark the limits of that part of the road within which persons may safely travel, or to furnish a guard against dangerous places, so that proper protection may be afforded to those who in the exercise of due care as travellers, while passing or standing on the way, might

otherwise be exposed to accident or injury. If a person, without fault or negligence on his part, is forced against a railing, or takes hold of it to aid his passage, or falls against it by accident, or has occasion to use it in any way in furtherance of the lawful and reasonable exercise of his right as a traveller, and by reason of any defect or insufficiency it gives way and causes an injury, a town or city would be liable to make full compensation for the damages thereby occasioned. But this is the extent of the liability. A city or town is not bound by law to erect and maintain railings for persons to sit upon or lean against. They are not intended to be used for the convenience and accommodation of those who seek for a place of rest, while they stop in the highway to lounge, or to recover from fatigue, or to engage in conversation. If a person uses them for such purposes, he does it at his own risk. A town or city cannot be held liable for damages which are sustained by persons in consequence of improper or unauthorized uses of the highway, which occasion or contribute to accidents. Suppose a person should tie his horse to a railing, and in consequence of its being decayed or otherwise out of repair, the horse should escape and sustain an injury. No one would contend that in such case an action would lie to recover damages of a town or city, which was bound to keep the way in repair, and to guard it with a sufficient railing. We can see no distinction between such a case and that on which the plaintiff relies to sustain his action.

The fact that the railing was defective and would have proved an insufficient barrier in case it became necessary for a traveller to use it for a legitimate object is wholly immaterial. It is a sufficient answer to the plaintiff's case, that the defendants were not bound to keep the railing in repair for the purpose for which it was used by the deceased at the time of the accident. *Richards* v. *Enfield*, 13 Gray, 344. It is equally immaterial to attempt to ascertain the secret motives or intentions of the deceased. The rights of the parties must be determined by acts of the deceased at the time when the occurrence took place. These indeed furnish the only means by which to ascertain his motives. Inasmuch as it appears that the deceased

32 *

leaned against the railing "while engaged in conversation generally" with his friend, and there is no evidence of any necessity or exigency which required him to use the railing at all, there is no room for an inference that he was in the exercise of a lawful right so as to entitle his administrator to maintain this action.

*Exceptions sustained.*